UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JUSTIN P.[1],                                          Case No. 3:24-cv-214
        Plaintiff,                                     Litkovitz, M.J.

vs.

COMMISSIONER OF                                        **ORDER**
OF SOCIAL SECURITY,
        Defendant.

        Plaintiff Justin P. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security

income (SSI).  This matter is before the Court on plaintiff's Statement of Errors (Doc. 8), the

Commissioner's response in opposition (Doc. 11), and plaintiff's reply (Doc. 12).

**I. Procedural Background**

        Plaintiff protectively filed his applications for DIB and SSI on August 19, 2019, alleging

disability beginning June 6, 2016, due to Crohn's disease, major depressive disorder, anxiety,

osteoarthritis, adjustment disorder with mixed emotional features, borderline personality traits,

polymyalgia, chronic back pain, osteopenia, and high cholesterol.  (Tr. 329-40; *see also* Tr. 401).

His applications were denied initially and on reconsideration.  Plaintiff, through counsel,

requested and was granted a *de novo* hearing before administrative law judge (ALJ) Heidi

Southern on April 15, 2020.  (Tr. 65-96).  Plaintiff and a vocational expert (VE) appeared by

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

telephone and testified at the ALJ hearing. (*Id.*). On April 22, 2020, the ALJ issued a decision denying plaintiff's applications. (Tr. 157-80). The Appeals Council granted plaintiff's request for review and remanded the matter for further proceedings. (Tr. 181-86).

On remand, the claim was returned to ALJ Southern. After a telephone hearing held on June 7, 2021 (Tr. 38-64), the ALJ issued a decision again denying plaintiff's applications on July 9, 2021. (Tr. 12-37). This decision became the final decision of the Commissioner when the Appeals Council denied review on October 26, 2021. (Tr. 1-6).

Plaintiff appealed the denial of his application to this Court. *See Justin P. v. Comm'r of Soc. Sec.*, No. 3:21-cv-325, 2023 WL 2456854 (S.D. Ohio Mar. 10, 2023). This Court remanded the matter to the Commissioner for further proceedings, finding that the assessed limitation "providing that Plaintiff have 'ready access to a restroom,' without more, fails to provide meaningful information about Plaintiff's work limitations and abilities." *Id.* at *3. This Court found that:

> This failure is particularly significant given that both vocational experts testified that having two additional fifteen-minute breaks outside of the standard break period would be work preclusive. Thus, even if ALJ Southern did not find Plaintiff's Crohn's disease and colitis symptoms fully credible, she should have made a specific finding regarding whether these conditions would cause additional breaks during the workday, since the vocational experts had testified that two additional fifteen-minute breaks would be work preclusive.

*Id.* at *4. The Court further determined that "the ALJ failed to resolve the inconsistencies pertaining to the frequency, duration, and urgency of [p]laintiff's restroom breaks with the vocational experts' testimony . . . [and] failure to do so constitutes reversible error." *Id.* Given the Court's decision to remand on plaintiff's first assignment of error, it declined to address

2

plaintiff's challenge concerning the omission of limitations associated with plaintiff's bilateral cubital tunnel syndrome. *Id.*

A third hearing was held on April 16, 2024, with ALJ Gregory G. Kenyon. (Tr. 2569-2601). On May 21, 2024, the ALJ issued a decision denying plaintiff's applications. (Tr. 2528-2567). Plaintiff did not request review by the Appeals Council opting to directly file suit with this Court.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] met the insured status requirements of the Social Security Act through December 31, 2021.

2. [Plaintiff] has not engaged in substantial gainful activity since June 6, 2016, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: lumbosacral degenerative disc disease, mild cervical degenerative disc disease, chronic pain syndrome, fibromyalgia, degenerative joint disease of the right hip, osteopenia, a history of a small right inguinal hernia status post repair, a history of bilateral cubital tunnel syndrome status post release, a history of a rib fracture, Crohn's disease,

4

obesity, depression, and an anxiety disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: (1) frequent crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) frequent use of the upper extremities for reaching, handling, and fingering; (5) limited to jobs in which he would have immediate access to restroom facilities and the ability to take two unscheduled five minute restroom breaks per day; (6) simple, routine, repetitive tasks; (7) occasional superficial contact with co-workers and supervisors with "superficial contact" defined as being able to receive simple instructions, ask simple questions, and receive performance appraisals but as unable to perform more complex social interactions such as persuading other people or resolving interpersonal conflicts; (8) no public contact; (9) no close over the shoulder supervision; (10) no fast paced work; (11) no strict production quotas; and (12) very little, if any, change in the job duties or the work routine from one day to the next.

6. [Plaintiff] is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).[2]

7. [Plaintiff] was born [in] . . . 1979 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 C.F.R. §§ 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

---

[2] Plaintiff's past relevant work was as a physical therapist assistant, a medium, skilled position. (Tr. 2558, 2593).

10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from June 6, 2016, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

(Tr. 2534-59).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as housekeeping cleaning (175,000 jobs nationally), marker (165,000 jobs nationally), and laundry worker (19,000 jobs nationally). (Tr. 2559, 2594).

6

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

**D. Specific Error**

Plaintiff raises two assignments of error, both challenging the ALJ's residual functional capacity (RFC) determination. The first involves the ALJ's assessment of plaintiff's limitations from Chron's disease and colitis: (1) the ALJ failed to resolve the inconsistencies pertaining to the frequency, duration, and urgency of plaintiff's restroom breaks with the VE's testimony; and (2) the ALJ assessed limitation of "two unscheduled five-minute restroom breaks per day" is arbitrary. (Doc. 8 at PageID 3100-3102). The second error involves the ALJ's failure to incorporate plaintiff's functional limitations for grasping, fingering, feeling, or handling in his RFC determination. (*Id.* at PageID 3102-05). The Commissioner counters the ALJ properly considered the record as a whole, evaluated the opinion evidence in accordance with the appropriate regulations, and incorporated the limitations supported by the record into the RFC finding. (Doc. 11 at PageID 3111-22).

1. <u>RFC Determination and Subjective Symptom Analysis</u>

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).[4] A claimant's RFC assessment must be based on all

---

[4] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)). For claims filed on or after March 27, 2017, these regulations are

the relevant evidence in his case file. (*Id.*). The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)-(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The ALJ is charged with the final responsibility in determining a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). The ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). The plaintiff "bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ." *Id.* (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)).

ALJs must "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2.

---

found at 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c, respectively. The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations for purposes of this Order.

*See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones,* 336 F.3d at 475-76. Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. § 404.1529(a) and (c); SSR 16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

(i)      Your daily activities;

(ii)     The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)    Precipitating and aggravating factors;

(iv)     The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)      Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)     Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also Id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record"). At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

2.   The ALJ's RFC and Symptom Severity Evaluation is Supported by Substantial Evidence

10

Plaintiff contends the ALJ erred in his symptom severity evaluation by not adequately accounting for plaintiff's gastrointestinal symptoms, including "excessive restroom use." (Doc. 8 at PageID 3100). Plaintiff argues that the included limitation of "two unscheduled five minute restroom breaks per day" is "arbitrary" (*Id.* at PageID 3101), and the ALJ "failed to resolve the inconsistencies pertaining to the duration and urgency of [p]laintiff's restroom breaks with the vocational expert's testimony that not even one additional 10-to-15-minute break would be tolerated in the workplace." (*Id.* at PageID 3101-02; Doc. 12 at PageID 3125).

The Commissioner responds by arguing that the ALJ's RFC is supported by substantial evidence and "consistent with the regulatory requirements." (Doc. 11 at PageID 3116). The Commissioner points out that the "ALJ specifically considered [plaintiff's testimony regarding the frequency of his restroom use] and found the alleged severity not supported by the record." (Doc. 11 at PageID 3116). Lastly, the Commissioner argues that plaintiff failed to meet his burden of proof to show more breaks were necessary to accommodate his gastrointestinal symptoms. (*Id.*)

In applying the two-step inquiry into symptom severity evaluation, the ALJ determined that plaintiff's Crohn's disease could reasonably be expected to produce his symptoms. (Tr. 2541). However, the ALJ found plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." (*Id.*).

The ALJ considered plaintiff's hearing testimony relating to his gastrointestinal symptoms and need for frequent restroom breaks, noting that at plaintiff's April 2020 hearing, plaintiff testified:

> [H]e had been receiving treatment for Crohn's disease off and on since he got out of the Navy, but he had always been taking medication.  At its worst, he had seven bowel movements per day, but he normally had around three or four.  Maybe five days of the month, he had seven bowel movements in a day.  His bowel movements were usually diarrhea, and it typically was worse in the mornings.  He sometimes had urgency, and he has had accidents in the past.  He indicated flares occurred more often than they used to.  When he was working, he had flares every three to five weeks that resulted in taking one to two days off.

(Tr. 2540, citing Tr. 2666-69).  The ALJ also considered plaintiff's June 2021 hearing testimony, noting that "plaintiff stated he used the restroom three to five times per day and up to seven times per day, and his restroom breaks could take five to twenty minutes."  (Tr. 2540, citing Tr. 2693-94).  Lastly, the ALJ considered plaintiff's most recent April 2024 hearing testimony:

> The [plaintiff] stated that he has issues with [Crohn's disease] with diarrhea. He averaged four to five bowel movements per day, but he could have as many as seven or eight.  He could have five bowel movements before noon.  He stated he was unable to leave the house on bad Crohn's days.

(Tr. 2541).  After considering plaintiff's testimony, the ALJ found plaintiff's "[s]ubjective reports related to his gastrointestinal impairments, along with gastroenterology notes frequently describing his Crohn's as mild, does not support the alleged severity or frequency of his symptoms."  (Tr. 2557).

According to the ALJ's decision, the primary reason for declining to credit plaintiff's testimony concerning the disabling severity of his Crohn's symptoms, including his statements about the duration and frequency of his bathroom breaks, was the ALJ's determination that his

disease was both mild and well controlled with proper medical care. (Tr. 2557). For example, the ALJ pointed to evidence in plaintiff's treatment records indicating that his need for restroom breaks was not as frequent as he alleged. The ALJ provided a detailed summary of plaintiff's gastrointestinal treatment history and subjective complaints relating to restroom breaks, contrasting those records with plaintiff's hearing testimony. (*See* Tr. 2547-50, July 2017: "loose bowel movements three to four times per day" (Tr. 2547-48, citing Tr. 530); August 2017: "three to four bowel movements that were loose to formed" (Tr. 2548, citing Tr. 1891); November 2017: "gastroenterology notes reflect that [plaintiff's] Budesonide helped 'a bit' . . . and he was having three to four bowel movements" (Tr. 2548, citing Tr. 1789); March 2018: "three bowel movements daily" (Tr. 2548, citing Tr. 1700); July 2018: "[Three weeks prior] he was having three bowel movements per day that were loose, and he denied any blood . . . now having flaky semisolid stools one to four times per day" (Tr. 2549, citing 1641); October 2018: "four to five times per day with urgent diarrhea" but normally "two to three bowel movements per day" (Tr. 2549, citing Tr. 1580); July 2019: "only three bowel movements per day on his worse days" and "bowel movements were typically loose" (Tr. 2549, citing Tr. 480); March 2021: "two to five bowel movements daily with no bleeding" (Tr. 2550, citing Tr. 2407); March 2023: "diarrhea once every other day" (Tr. 2550, citing Tr. 2863); November 2023: "doing well overall with two to four formed bowel movements daily" (Tr. 2550, citing Tr. 2886)). These medical records substantially support the ALJ's finding that the frequency of bowel movements was not as severe as alleged by plaintiff.

13

The ALJ further pointed to evidence in the record indicating that in August 2020, plaintiff reported "he was doing well with no abdominal pain, nausea, vomiting, or blood in his stool . . . [with only] occasional bad days with four to five bowel movements that may be loose." (Tr. 2549-50, citing Tr. 2447).  During the same visit, plaintiff's treatment notes indicate plaintiff "only had one to two bowel movements" each day on average and that his Crohn's disease was "currently well [controlled] on 3mg Budesonide daily."  (Tr. 2550, citing Tr. 2447-48).  The ALJ considered evidence in plaintiff's primary care treatment notes indicating that his Crohn's disease was "fairly stable" (Tr. 2550, citing Tr. 2954, 2971, 3000) and "mild" (Tr. 2550, citing Tr. 2408; Tr. 2549, citing Tr. 1701; Tr. 2548, citing 1790).  The ALJ considered that plaintiff was not always compliant with taking his prescribed medication, noting plaintiff "acknowledged that he stopped taking his Budesonide one month prior because he did not feel that he needed it anymore."  (Tr. 2550, citing Tr. 2425).  In September 2022, Plaintiff's primary care physician noted that plaintiff "only took his azathioprine off and on" and had not filled his prescription since December 2021.  (Tr. 2550, citing Tr. 2954) (*see also Id.*, citing Tr. 2862, noting plaintiff has been "non-compliant").  The medical record substantially supports the ALJ's finding that plaintiff's testimony of symptoms from Chron's disease were not as severe as he alleged.

Plaintiff also asserts that the ALJ provided no "evidence or logical bridge [to finding] that five minutes is a sufficient duration to accommodate [plaintiff's] unscheduled restroom breaks" (Doc. 12 at PageID 3125) and failed to "articulate with specificity reasons for finding that five minutes sufficiently accommodates [plaintiff's] unscheduled restroom breaks."  (Doc. 12 at PageID 3126).  However, plaintiff's argument fails because the ALJ properly considered the

14

medical evidence in the record and explained his reasoning for finding that the intensity and persistence of plaintiff's symptoms were less severe than alleged. In considering the severity of plaintiff's symptoms, the ALJ analyzed the frequency and intensity of plaintiff's symptoms, medications and other methods used to manage his symptoms, and how those symptoms impact his functional limitations. The ALJ found:

> [T]he record, including [plaintiff's] treatment history and subjective reports, does not support symptoms or limitations as severe as alleged. Even at his worst, which was usually accompanied by noncompliance with his treatment recommendations, he did not endorse restroom use with the frequency alleged at his hearings. Furthermore, there is no basis to conclude that all of his restroom use would occur at work. Therefore, immediate access to a restroom with no more than two five-minute breaks, in addition to the scheduled breaks in full-time work, fully accommodates the claimant's gastrointestinal complaints.

(Tr. 2550-51). The ALJ further explained:

> In deference to his history of Crohn's, which is usually adequately controlled with medication, the undersigned added a restriction to immediate access to a restroom with no more than two five-minute breaks. However, as noted above, his generally mild Crohn's demonstrates that no further breaks or additional restrictions are needed to address his gastrointestinal complaints.

(Tr. 2556). Given plaintiff's testimony that his restroom breaks can take between five and twenty minutes and the ALJ's substantially supported finding that plaintiff's symptoms were not as severe as alleged at the hearing, the ALJ reasonably selected the low end of the five-to-twenty-minute range for incorporation into the RFC. Plaintiff does not point to any other medical evidence showing that his Crohn's disease necessitated restroom breaks in excess of five minutes in duration or that the additional two-five minute breaks would not accommodate plaintiff's needs in conjunction with the "usual and customary morning break, afternoon break and lunch break" identified by the ALJ in his hypothetical questions to the VE. (Tr. 2551, 2595).

15

Plaintiff next contends the ALJ failed to explain what "ready access" to a restroom means in accordance with the Court's remand order. The Court previously asked:

> [D]oes "ready" access refer simply to the proximity of an on-site restroom, or does it also address the urgency of his condition such that he would be permitted to step away from his workstation at any time to use the restroom?

(Tr. 2640-2641). Plaintiff contends ALJ Kenyon simply substituted the word "immediate" for "ready" in his RFC without answering the Court's question.

The VE's testimony addressed the issue identified by plaintiff. The VE testified that "immediate access to a bathroom" is environment and employer dependent. (Tr. 2595). The VE also testified, however, that given the nature of the jobs he identified, which did not require tandem work or reliance on another person's job duties, the restriction "would probably be tolerable in the majority of positions" he identified. (Tr. 2596). The Court finds no error in this regard.

The VE also testified that the "two five minute restroom breaks a day would be acceptable in these types of jobs." (Tr. 2595). The frequency and duration of plaintiff's bathroom breaks identified by the ALJ is in keeping with the ALJ's duties in crafting an RFC. Courts within the Sixth Circuit and elsewhere require that "when a restroom limitation is incorporated into an RFC, an ALJ must also make a specific finding about the frequency and duration of a claimant's bathroom usage as part of that RFC." *Megan I. B. v. Comm'r of Soc. Sec.,* No. 2:22-cv-2238, 2022 WL 16945709, at *3 (S.D. Ohio Nov. 15, 2022) (citing *McQuade v. Comm'r of Soc. Sec.*, No. 1:21-cv-834, 2022 WL 4375984, at * 3-4 (N.D. Ohio Sept. 22, 2022) (holding that an ALJ errs when failing to make findings about the frequency and duration of a

16

claimant's bathroom use when he or she finds that the claimant has a limit related to the need for bathroom breaks and access); *Green v. Astrue*, No. 3:09-cv-331, 2010 WL 2901765, at \*5 (E.D. Tenn. July 2, 2010) (finding that where an ALJ finds that a claimant "has an impairment that requires her to have 'ready access to a bathroom' and the 'freedom to use it as needed' an ALJ should make a specific finding concerning the frequency and duration of [the claimant]'s bathroom usage") (citation omitted), *report and recommendation adopted*, 2010 WL 2901762 (E.D. Tenn. July 20, 2010); *Lewis v. Kijakazi*, No. 5:21-cv-00111-D, 2022 WL 1652424, at \*5 (E.D. N.C. May 4, 2022) (finding that ALJ erred by finding that a claimant needed ready access to bathrooms but failing to make findings about the frequency and duration of the claimant's bathroom use), *report and recommendation adopted*, 2022 WL 1651451 (E.D. N.C. May 24, 2022)). Absent a finding relating to the frequency and duration of a plaintiff's bathroom use, "an RFC cannot be reliably used in the next step of the disability determination process." *Megan I. B.*, 2022 WL 16945709, at \*3 (citing *Dickerson v. Comm'r of Soc. Sec.*, No. 4:18-cv-4578, 2019 WL 7938518, at \*4 (S.D. Tex. Dec. 9, 2019) (explaining that an ALJ's failure to specify the duration and frequency impacts the sufficiency of a VE's testimony in response to a hypothetical), *report and recommendation adopted*, 2020 WL 730877 (S.D. Tex. Feb. 12, 2020)).

Here, the ALJ did make such a finding by including a provision in the RFC that plaintiff have "the ability to take two unscheduled five-minute restroom breaks per day." (Tr. 2540). The ALJ properly considered the record as a whole and determined that plaintiff's gastrointestinal symptoms were not as severe as alleged, but he nevertheless included a limitation addressing the

frequency and duration of the plaintiff's bathroom use. *Jeley v. Comm'r of Soc. Sec.,* No. 2:19-cv-3107, 2020 WL 4528823, at *6 (S.D. Ohio Aug. 6, 2020) (finding the "ALJ's RFC *does* address the duration and frequency of Plaintiff's bathroom breaks" and therefore was not a "vague and arbitrary limitation[]")*, report and recommendation adopted,* 2020 WL 5793183 (S.D. Ohio Sept. 29, 2020).

Further, as to plaintiff's assertion that the ALJ erred by failing to reconcile the VE's testimony with plaintiff's restroom break needs, the Court finds this argument unpersuasive. During the hearing, ALJ Kenyon posed a series of hypotheticals to the VE about the availability of jobs in the national economy for an individual with certain hypothetical limitations. (Tr. 2593-96). In response to these hypotheticals, the VE was able to identify at least 350,000 jobs that would be available in the national economy for an individual with the specified limitations ultimately included in the RFC. (Tr. 2594). On examination by plaintiff's counsel, the VE was asked whether plaintiff would be accommodated in the workplace if, instead of a five-minute break, he needed a longer break. (Tr. 2597). The VE replied that a longer the break is "more noticeable and the more problematic . . . even if it were one 10 to 15 minute break, I think that could be a problem if that were happening every day." (*Id.*). When asked about the tolerance for off-task behavior and absenteeism, the VE indicated that any off-task behavior exceeding three times more than the average worker would be work-preclusive. (Tr. 2599). Here, the ALJ reasonably concluded that plaintiff's alleged symptoms and need for restroom breaks was not as severe as alleged. Therefore, the ALJ's determination that plaintiff required "two unscheduled

18

five-minute restroom breaks per day" is consistent with the VE's testimony and supported by substantial evidence. (Tr. 2540).

The Court finds the ALJ's basis for rejecting plaintiff's testimony about the severity of his Crohn's symptoms and need for bathroom breaks is supported by substantial evidence. The ALJ did not disregard plaintiff's claim that he needs frequent restroom breaks. Rather, plaintiff's testimony was considered by the ALJ alongside other evidence including medical findings confirming his Crohn's disease was mild. The RFC reflects the ALJ's determination regarding plaintiff's bathroom breaks, finding that he would require two additional breaks each day for up to five minutes. (Tr. 2556). To the extent plaintiff claims that additional restrictions should have been included in the RFC for this impairment, he has not produced evidence showing that further specific work-related limitations are warranted. The ALJ's findings substantially support the restroom break limitation in the RFC. Plaintiff's first assignment of error is overruled.

The ALJ's finding relating to plaintiff's cubital tunnel syndrome are also substantially supported by the record. Plaintiff argues the ALJ failed to accommodate plaintiff's bilateral cubital tunnel syndrome. (Doc. 8 at PageID 3103). Plaintiff argues the ALJ's limitation of "frequent use of the upper extremities for reaching, handling, and fingering" still requires up to six out of eight hours per days of reaching, handling, and fingering, and thus "is not really a limitation at all." (*Id.*, citing Tr. 2539 and SSR 83-10). The Commissioner counters that "frequent" is a limitation because it limits plaintiff to using his upper extremities "one-third to two-thirds of the time." (Doc. 11 at PageID 3120, citing SSR 83-10). The Commissioner argues that the ALJ "properly considered" plaintiff's history of bilateral cubital tunnel syndrome and

found the "record did not support bilateral cubital tunnel syndrome with symptoms and limitations as severe as alleged" by plaintiff.  (*Id.* at PageID 3121).  The Commissioner also points out that plaintiff did not submit any medical evidence or opinion that his "cubital tunnel syndrome causer greater limitations than those included in the RFC."  (*Id.*).

Plaintiff's argument that reducing plaintiff's use of upper extremities to "two-thirds of the time" is not a "limitation" is at odds with how the Social Security Administration defines commonly used terms for medical-vocational evaluations.  "Frequent" is a vocationally relevant term of art in Social Security law that is distinct from the greater limitation of "constant."  The terms "frequently" and "constantly" are defined in the Commissioner's Program Operations Manual System ("POMS")[5] as follows:

> 11. Constantly: Use of this term in the RFC or [Selected Characteristics of Occupations ("SCO")] means that the activity or condition occurs two-thirds or more of an eight-hour day.

> 33. Frequently: Use of this term in the SCO or RFC means that the activity or condition occurs one-third to two-thirds of an 8-hour workday.

DI 25001.001 Medical and Vocational Quick Reference Guide, found at

https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001 (last visited on Aug. 20, 2025).  The term "frequent" is also defined in SSR 83-10 to mean "occurring from one-third to two-thirds of the time."  *See* SSR 83-10, 1983 WL 31251, at *6.  The inclusion of a restriction to "frequent" use of the upper extremities in the RFC is a limitation recognized in Social Security law, and plaintiff's argument is not well-taken.

---

[5] The POMS is a policy and procedure manual used by Department of Health and Human Services employees.  *Davis v. Sec'y HHS*, 867 F.2d 336, 340 (6th Circ. 1989).  It lacks the force of law, but the Sixth Circuit considers it to be persuasive authority on procedural Social Security issues.  *Id.*

Plaintiff appears to also argue that the ALJ erred because there is "no medical opinion evidence whatsoever supporting the ALJ's summary conclusion that plaintiff can sustain work involving frequent reaching, handling, and fingering," and the state agency medical consultants, who the ALJ found to be partially persuasive, did not address his cubital tunnel syndrome. (Doc. 8 at PageID 3104; Doc. 12 at PageID 3127). The Commissioner argues that the ALJ "properly considered the impairment" and no post-surgical findings supported greater limitations relating to plaintiff's cubital tunnel syndrome. (Doc. 11 at PageID 3120-21).

In September 2019, state agency consultant Gary Hinzman, M.D., reviewed plaintiff's record and opined that he could lift 20 pounds frequently and 10 pounds occasionally, sit for 6 hours, and stand/walk for 6 hours. (Tr. 105). Dr. Hinzman also found that plaintiff could frequently stoop, kneel, crouch, crawl, and climb ramps and stairs, and occasionally climb ladders, ropes, or scaffolds. (Tr. 105-06). In November 2019, Linda Hall, M.D., reviewed plaintiff's file upon reconsideration and affirmed Dr. Hinzman's opinion. (Tr. 135-37).

In evaluating the prior administrative medical findings, the ALJ found they were "partially persuasive," noting they were "somewhat supported by and consistent with the record, which demonstrated a longstanding history of pain and related symptoms but with adequate functioning on his physical examinations." (Tr. 2555). The ALJ based this statement on his review of the record where he found plaintiff's strength was rated at least 4/5 and often 5/5. (Tr. 2555, citing to Tr. 470, 475, 498, 501, 503, 507, 509, 511, 516-17, 520, 553, 731, 734, 736, 1081, 1720, 1749, 2555, 3003). The ALJ further noted that despite the lack of evidence to support the alleged severity of plaintiff's symptoms, he still addressed them in his findings:

> [Plaintiff's] EMG and nerve conduction study was normal (e.g. Exhibit 1F/18, 124). Imaging of the back generally reflects no more than mild abnormalities (e.g. Exhibits 1F/17, 73, 137-174; 2F/107-108; 4F/262-265; 10F/11). Such findings further support an ability to perform a reduced range of light work as opined. Nevertheless, the undersigned included manipulative limitations in deference to his remote history of a cubital tunnel release despite his often 5/5 strength, including with respect to handgrip.

(Tr. 2589).

The Court finds the ALJ's evaluation of plaintiff's cubital tunnel syndrome symptoms is based on substantial evidence. The ALJ considered plaintiff's testimony about his cubital tunnel syndrome symptoms, including that it "caused a shock down into his pinkie and ring fingers" and "made his elbows and wrists ache," as well as difficulties he reported with daily activities like carrying groceries. (Tr. 2541, citing Tr. 2696). The ALJ properly considered the treatment findings indicating that despite plaintiff's "longstanding history of pain and related symptoms . . . the record does not support symptoms as intense, persistent, or limiting as alleged." In evaluating the intensity, persistence, or limiting effects of plaintiff's symptoms, the ALJ noted the lack of treatment and objective medical findings related to plaintiff's cubital tunnel syndrome following his 2016 surgery. (Tr. 2542). The ALJ concluded that:

> The record reflects that the claimant had bilateral cubital tunnel syndrome with ulnar nerve transposition in 2016, and he indicated sitting funny to guard his elbow started the pain in his right buttock (e.g. Exhibit 5F/916). However, despite some residual complaints of upper extremity pain, weakness, and related symptoms, there is no indication that he required further treatment specifically for his history of bilateral cubital tunnel syndrome (Exhibits 1F-10F). As will be discussed more thoroughly below, he consistently presents with relatively good strength in the bilateral upper extremities (Exhibits 1F-10F). No further objective studies, such as EMGs or imaging, address the upper extremities (Exhibits 1F-10F). Thus, the record does not support bilateral cubital tunnel syndromes [sic] with symptoms and limitations as severe as alleged. Therefore, the reduced range of light work with frequent manipulative abilities fully addresses the claimant's history of bilateral

22

cubital tunnel syndrome while giving the claimant the full benefit of the doubt with
respect to his subjective complaints.

(*Id.*).

The ALJ properly observed throughout his decision that plaintiff's treatment notes
indicated full strength and range of motion in his upper extremities.  (Tr. 2543, citing Tr. 669,
"5/5 . . . hand grip strength"; Tr. 2543, 2576, citing Tr. 553, "full range of motion and full 5/5
strength in the upper and lower extremities"; Tr. 2577, citing Tr. 1720 "full 5/5 strength in upper
and lower extremities"; Tr. 2578, citing Tr. 511, "range of motion in the bilateral upper and
lower extremities was within normal limits, though he had some reduction in strength ranging
from 4-/5 to 4/5"; Tr. 2546, citing Tr. 470, "full 5/5 strength in all tested muscle groups of the
bilateral upper and lower extremities").  (*See also* Tr. 2555, citing Tr. 470, 475, 498, 501, 503,
507, 509, 511, 516-517, 520, 553, 731, 734, 736, 1081, 1640, 1705, 1720, 1749).  The ALJ
specifically noted that in May 2019, plaintiff "maintained full 5/5 strength in the tested muscle
groups of the bilateral upper and lower extremities, including with respect to wrist strength,
which had some give due to pain."  (Tr. 2546, citing Tr. 498).

It was the ALJ's duty, and not this Court's, to weigh the conflicting evidence and assess
the consistency of plaintiff's subjective complaints.  *See Reynolds v. Comm'r of Soc. Sec.*, 424 F.
App'x 411, 414 (6th Cir. 2011) (citing *Youghingheny & Ohio Coal Co. v. Webb*, 49 F.3d 244,
246 (6th Cir. 1995)).  Plaintiff cites no authority for his argument that "frequent" is not an actual
limitation, and as the Commissioner points out, plaintiff does not point to any evidence in the
record to indicate that his cubital tunnel syndrome requires further limitations to accommodate it.
(Doc. 11 at PageID 3121).  The ALJ considered a number of factors in determining symptom

severity, including plaintiff's treatment course, the objective medical evidence, plaintiff's daily activities, and clinical findings on examination.  Further, the ALJ's determination regarding the consistency of a claimant's subjective complaints with the record evidence is "to be accorded great weight and deference. . . ."  *John D. v. Comm'r of Soc. Sec.*, No. 2:23-cv-3613, 2025 WL 39865, at *5 (S.D. Ohio Jan. 7, 2025), *report and recommendation adopted,* 2025 WL 428528 (S.D. Ohio Feb. 7, 2025) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).  The Court finds that the ALJ's decision is supported by substantial evidence, and plaintiff's second assignment of error is overruled.

### IT IS THEREFORE ORDERED THAT:

Based on the foregoing, plaintiff's Statement of Errors (Doc. 8) is **OVERRULED,** and the Commissioner's non-disability finding is **AFFIRMED.  IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date:   8/21/2025

Karen L. Litkovitz
United States Magistrate Judge

24